We'll begin with case number 22-642, Churner v. Westchester Jewish Community. Mr. Churner, whenever you're ready. Good morning. My name is Dan Churner. I am the plaintiff appellant. I also represent myself. I want to thank your honors for taking the time to hear an oral argument. You don't have to thank us. This is your court. Yes, your honor. I brought this case because the law is on my side. My close friends, people I know, some of my lawyers know the hell I've been through for 15 years to protect my daughters and to raise my children free from interference. This was yet another chapter, a sordid chapter in what I went through after the divorce when I went for custody and I encountered a forensic evaluator who basically, to put it politely, willingly and deliberately flouted a court order and let me know and eventually let the court know with her report that she didn't respect the rule of law and didn't think she had to follow what the court dictated to her. So this case is on appeal from the dismissal and there's basically two or three main issues, as your honors are probably aware. The first one being whether or not the defendants are the defendant appellees are state actors. I submit that they are and that the lower court got it wrong. The first test is the court order itself, which is at A98 through 101 of the appendix.  The court is telling the defendants what you have to do when you conduct your evaluation. Specifically, you have to observe the children with each parent. We know from state case law, it says if you don't do that, your report is basically worthless. She knows she needs to do that. I discussed it with her when I met with her, as I stated in my pleadings, and she refused to do it. So the first test is the state is telling the private individual or entity what you have to do. The state has created the legal framework, and that framework is found in the court order. It says you have to observe the children with each parent. You have to avail yourself of relevant information. You have to conduct other investigation as appropriate. She didn't do any of that. I told her and gave her information on the family court petition I filed in 2013 for an order of protection for my children based on the threats of violence and abuse of the mother and the grandmother. She was aware of that. State court didn't do anything about it. There's a bunch of cases holding that court-appointed psychologists are not state actors. What would you have us do with those? Find that they're wrong. Because the ones that I've seen and the counsel has quoted Categorically wrong is your argument. Oh, yes. Rule court-appointed psychologist is in fact a state actor. Yes, and whether, you know, let's put it politely. You know, there's always people in a given industry who aren't as precise as perhaps they should be. So I've seen it. We've all seen it. Arguably the response you get is, well, that's why we have appellate courts, right? But my submission is to you, and I've said it in my papers, they got it wrong. Because how can you sit there and have a situation where you say, if you find that, as Judge Seibel did, shame on her, because I think she's a very well-respected judge, and I know what she did before she became a judge, but I still think she got this wrong. You can't sit there and say, oh, well, they're not state actors because the state didn't control what they did. Well, sure they did. And it's in her opinion, and I think she's dead wrong. The state did tell this individual what she had to do. And so if you find she's not a state actor, you have the problem that you're now saying that, hey, Ms. Evaluator, in this case, the defendant, you can do whatever you want. You can disobey a valid order of a court of competent jurisdiction. You can ignore it and flout it with impunity. And that goes against our common sense and our sensibility as citizens of this country, all of us, I think, with the sense that we are a nation of laws, and the rule of law does prevail. If you find she's not a state actor, that's not the case. And I think all those courts that summarily said, oh, well, they're not state actors, they were wrong. And I responded to some of them in my reply brief where I said, well, that's not the case. In this case was different than that case and so on and so forth. So I've distinguished some of it, but most of them, they just got it wrong. I think they glided over that issue and just sort of summarily said it without any support from relevant case law. You prevail below, right? In the family court action? I got custody of my children. Which is what you were seeking. Yes. And so what exactly is the injury that you believe you experienced as a result of this? I'll give you an example. First of all, they interfered with my right to be left alone and raise my children free from governmental interference. And I'll give you one. My youngest daughter is an incredible volleyball player. Her coaches have told me, her coach, her varsity coach, who is one state champions, told me that he has never seen a young woman with her skills and abilities and her drive and desire lead other women the way she has the ability to do. At this juncture, when I was in family court dealing with custody, my daughter was, I think, 13 or 14 when I filed. As a result, the money I had to spend to fend off this behavior, $30,000 to $40,000, should have been used. I wanted to use it to get my daughter to regional clubs because she grew up in an area that's not known for producing powerhouse volleyball players, so there's not a lot of recruiting. So the way for me to have done it was to have got her to regional clubs so she gets a higher profile and she's seen regionally and nationally. I didn't get the opportunity to do that. That's the tragedy. That's the tragedy of putting people in concentration camps. That's the tragedy of Jim Crow. I grew up in the deep south, outside of Birmingham, Alabama. I saw the results of the civil rights movement, but I saw the death of Jim Crow, but before there was economic change. The tragedy is you didn't even get the opportunity to find out what was possible. That's one of the damages I suffered. The emotional distress, physical stress I experienced from that still goes on to this day because my daughter's in college. She's not playing volleyball. She didn't get the chance that she wanted her father to provide for her to get that opportunity to see how she could be, how good she could be, so that years later when she's applying for college or trying to go out for club teams in college, she's got those skills and she's got coaches regionally and nationally who will speak for her to get her to that level. For example, I'm glad you asked the question. We reserved a couple minutes for rebuttal. Do you want to use that now? Let me use it after they speak, if that's okay. Thank you, Judge. Thank you. Good morning, Your Honors. May it please the Court, I'm Barbara Goldberg and I represent Dr. McKay. It's our position that the district court properly granted the motions to dismiss because the plaintiff failed to plead sufficient factual allegations which, if they're accepted as true, stated a claim to relief that was plausible on its face. And the relevant case law, Ashcroft v. Iqbal, Bell Atlantic v. Twombly, says the claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. There has to be more than a sheer possibility that a defendant acted unlawfully and, therefore, while the court must accept factual allegations in the complaint as true, it should not give any credence to mere legal conclusions which are couched as factual allegations. And I submit that that's all that the plaintiff offered here. He did not plead facts to support the allegation that Dr. McKay was a state actor or that she was acting under color of state law. The district court, therefore, properly found that his allegations were conclusory as he did not allege that anything the defendants did employed the coercive power of the state, was closely intertwined with the state, or amounted to the state delegating a public function to them. And plaintiff has really not cited any case law to support his assertion that the family court order created the quote-unquote framework within which the evaluation took place and that that somehow gives rise to Dr. McKay acting under color of state law. And I don't think that any of his allegations... Excuse me. Can I ask you a question? Yeah, isn't there another, isn't there an issue of sovereign immunity here, too? Isn't there an immunity issue? I thought there were two bases for this. I'm sorry. I'm sorry, Your Honor, I did not understand the question. Neither did I. The question is whether there aren't two, one of which is sovereign immunity, which is not a question. It's a different question. Well, there are two grants here on which I think that Judge Seibel properly dismissed the action. I haven't gotten to the argument regarding the judicial immunity, but as we've discussed... That's what I mean, yeah. I think that may be an easier case for you than the one that you're arguing now, that's all. But go ahead. I'm sorry, Your Honor, I did not... Maybe you could turn to the immunity issue instead of the state action. Okay. I apologize. There are a number of cases cited in our brief and referenced by the court in the questioning of Mr. Turner that hold that a court-appointed forensic evaluator is immune from a civil lawsuit such as this under the doctrine of quasi-judicial immunity. And one of those cases, which we've discussed in detail in our brief, is the case of McKnight v. Middleton. And that case said that a psychotherapist was entitled to absolute immunity. And for Mr. Turner to say that the district court in McKnight, the district court here, and the other cases, to say that they got it wrong is essentially saying that this court got it wrong because, as Your Honors are aware, this court did affirm the determination of the district court in the McKnight case. And I don't think that Mr. Turner has given the court any reason why the court should revisit its determination. And I see that my time is rapidly being used up. I want to make the point that nothing Dr. McKay did ultimately caused any injury to the plaintiff because, as Your Honors are aware, one of the questions, he never lost custody of his children during the pendency of these proceedings. And it's unfortunate that he may have had to spend money in the custody proceeding, in the divorce proceeding, that he would have preferred to spend on something else. But the fact that there was a custody proceeding is not Dr. McKay's fault. And while he may take issue with the way that she conducted her investigation, ultimately she did not take the decisive step that caused injury to him. This is not a case where someone lost custody.  Thank you, Counsel. Next we'll hear from Counsel for West Chester. Thank you, Your Honors. My name is Daniel Milstein. I'm an attorney with Aaronson Rapport, Feinstein & Deutsch. My office represents West Chester Jewish Community Services in this matter. I really do not have that much to add to what Ms. Goldberg was discussing as to Dr. McKay or to add on top of Judge Seibel's order, which I submit was correctly decided. She relied on the established case law of this court. That was Ms. Goldberg's McKnight case, which directly discussed forensic evaluators. She correctly decided that forensic evaluators, even if they are appointed by the court, are entitled to quasi-judicial immunity. The issue of whether the court, just going back briefly to the state actor question, going back to whether the court established a framework, that would not apply to the judicial immunity question, quasi-judicial immunity. Because if it is the argument of the appellant that a forensic evaluator is a state actor, then by definition it would be intertwined with the court such that a forensic evaluator would be subject to quasi-judicial immunity. The case that Judge Seibel cited, McKnight v. Middleton, 434 Federal Appendix 32, that was explicitly affirmed by the circuit. It is not just Judge Seibel that Mr. Turner is saying got the case law wrong. It is the circuit that Mr. Turner is saying got the case law wrong. So the argument is that even if Dr. McKay was a state actor, she would still be covered by quasi-judicial immunity, and so it doesn't matter? Yes, Your Honor. I meant the state actor decision. Yes, I think that is my argument, Your Honor. If Dr. McKay was a state actor, Dr. McKay would still be entitled to quasi-judicial immunity. And I would just like to briefly move to a separate issue involving Westchester Jewish Community Services. The pleadings make very clear that Westchester Jewish Community Services was not the forensic evaluator in this case. I do not dispute that Westchester Jewish Community Services does have some affiliation with Dr. McKay, but Dr. McKay herself, in her private capacity, was appointed the forensic evaluator in this case. The pleadings themselves make this abundantly clear. If you look at page A-10 of the record, the appellant pleads affirmatively that he and the other party in the custody dispute paid Dr. McKay directly, as this Court knows, for Responding Act Superior to apply. The actions of an employee must further the business interests of the employer. By the forecourts of the complaint, by the pleadings themselves, it is clear that the only business interests that were being furthered were Dr. McKay's personal interests. So I'm not trying to take the position that Dr. McKay did anything wrong, but even if she did, that could not apply to Westchester Jewish Community Services. Their presence in the order itself is merely listing her address. There is no fact pleaded anywhere in the record indicating that Westchester Jewish Community Services did anything or was even aware of Dr. McKay's actions. And again, I think it is entirely relevant that the parties in the custody dispute paid Dr. McKay directly. And lastly, what I would just like to point out is the issues that Mr. Turner was discussing regarding the alleged injury. I think we can all be impressed by his daughter and her skills, but it does seem that the injury being alleged is related solely to the fact there is a custody dispute and that there was a forensic evaluator, not any actions of the forensic evaluation itself. That is not an established injury under the laws of the state. The relevant inquiry is that Mr. Turner did retain custody. He got the exact remedy he was searching for. It was him himself who initiated the custody proceedings. So even if Dr. McKay was a state actor and even if she was not entitled to quasi-judicial immunity, it is my argument that there are no plausible facts suggesting there are actual damages in this case. I will wrap up. Thank you very much, Your Honors. Thank you, counsel. Mr. Turner, you have three minutes. Yes, Your Honor. Quickly, first of all, I did get what this circuit said about judicial immunity. It's on page 24 of my brief in Scotto v. Almenus, and I'll quote, a limited number of officials are entitled to absolute immunity from Section 1983 damages liability for their official acts. However, because absolute immunity, quote, detracts from Section 1983's broadly remedial purpose, Spear v. Town of West Hartford 954 of Second 63, Second Circuit 1992, the presumption is that qualified immunity rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. Burns v. Reed, quoting Burns v. Reed, 500 U.S. 478, 1991. Absolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy. In fact, in this case, public policy required that the defendants do their job as ordered by the court and not violate my constitutional rights. So the public policy weighs in my favor, not in theirs. Let's not get it twisted. Further, page 25, where Gregory v. City of Louisville, 444 of Third 725, Sixth Circuit 2006, they quote Buckley v. Fritz-Simmons, 509 U.S. 259, 1995. In contrast, those functions more investigative in nature, searching for, quote, clues and corroboration, unquote, are more removed from the judicial process and merit only qualified immunity. That's the nature of why the family court has to appoint a forensic evaluator, a supposed expert who has skills that the judges do not have to do an investigation and report back to the court. So I did get it right. Why the court affirmed McKnight v. Middleton, who knows? I wasn't there. I don't read other people's minds. The court wasn't paying attention. Who knows? But this court has already stated its position in this regard. It's found in Scott v. Alminas, and it weighs in my favor. Quickly, the issue of damages, you know, I'm really insulted by that because where does it end? Do you say that all the people who were in concentration camps in Nazi Germany who made it out, well, they didn't really suffer any damages. They got what they wanted. They didn't die, and they got freed. We all know from world history they suffered massive damages. Now, I'm not analogizing the extreme of that situation, but it is the point, the principle is the same. I suffered damages, and it's insulting to me and my daughters to claim that I didn't. Finally, the issue of WJC. Let me just assure you we've read all the papers very, very carefully, and one of the things we take away is we all know that family disputes and custody disputes can get difficult and emotionally trying. But I just want to assure you that we've gone through all these papers, and we understand what you've been through. We understand all the anguish you've suffered. That's a separate question from whether – from who prevails on this appeal. So we are obligated here to resolve this case on the law, and I haven't talked with my colleagues, so we obviously don't know how it will come out, but we understand your pain. Yes, Judge, and I appreciate that, and as my faith has deepened as a result of what I've been through, I've come to understand it's a fight over free will. It's a fight over trying to take people's free will and preventing their children from developing free will. John Brown spoke about this before he was hanged for the raid on Harper's Fair. This has gone on in Roman's times. It's going on now, arguably, in communist China. So I've come to understand that, right, and I have friends of faith all in my life, and we all understand this. I'm a commissioned bank examiner. You should understand this. I stopped litigating because I won't be part of this world anymore, just like John Martin said he won't be part of it. I have the power, granted by the federal government, just like you, to issue a legal document with full force and effect. My commission comes from Congress. I have the right to go into a depository institution, examine their books and records, and issue a ruling which has legal effect. Not once in my life have I thought of abusing that. So it bothers me when I see lower court judges come up with these decisions which are not in accord with the case law. So, yes, Judge, I appreciate that, but I also— We understand what's at issue here. And I have all that inside me, but I also have the fervent belief that I'm right. The law is on my side. So beyond my personal feelings and my anguish, I decided, by looking up the case law and researching it, before I filed a lawsuit, I decided the law is on my side and I'm right. And the law requires you to rule as I'm asking you to do. One more thing, very briefly, if I may. WJCS, they have some supervisory authority. So I think I may very well have something in the nature of a Monell claim, but I haven't had discovery yet. One of the questions I have is, what were you guys doing when she was refusing to do her job and follow the court order? Did the alarm bells go off? Do you have a system of supervisory controls, which is what I do in the financial institutions that I see, that I do now privately. They have to have supervisory controls. That helped to save the financial system in my country. I'm immensely proud of that service that I did. I have colleagues all over the country. We know what we achieved. That's what makes the world work. That's what enables there to be institutions like judiciary. So my argument is, on this initial pass, the law is on my side. And I appreciate your time, and I'm asking that you rule as I'm requesting. Thank you very much. Thank you. Thank you all. We'll take the case under advisement. The next argument on the calendar for today is 22-2056, United States v. Williams. Mr. Matheson, whenever you're ready. Thank you. May it please the court, Chandler Matheson on behalf of Tawan Williams. Your honors, why am I here? Because your honors must be wondering, under the analysis that's been given to the trial courts, there really wasn't a great error in this case. If you look at the factors under the Speedy Trial Act and the way, in particular, the ends of justice exception excludes time from that calculation, well, the prosecution arguably has a better argument than I do, and I fail. So why appeal it? Because, your honors, what I tried to bring to the attention of the trial court, and what I'll try to bring to the attention of this court, is over the past two and a half years, what we've seen is a remarkable event that really illuminated something that's missing in our law and our analysis, which are the conditions of confinement for those in pretrial detention can be excruciating, can be punishing, can be something that we would not expect or tolerate in this country. And we've excused it because it was a pandemic. We've said it's unprecedented, so we all did the best we could, and we made the decisions that we made to protect the health and safety of the public. I can tell you for those who are incarcerated in pretrial detention who are presumed innocent, they do not see that their interests were protected. They do not see their health and safety and welfare as being protected. What they saw was that they were in solitary confinement for weeks on end. Duann Williams was homeless at the age of eight, abandoned, no formal education, no mental health treatment, no psychological intervention, no counseling of any kind to speak. Mr. Williams is a damaged individual who is regularly subjected to solitary confinement. I brought this to the attention of the trial court, and I bring it to the attention of this circuit. There is unfortunately no factor in the analysis that says a trial court will consider the conditions of confinement. The language is length of confinement. The language is the responsibility of the government for any delays in bringing the case to trial or the trial needs of the defense, which focus on discovery. I have to get my case ready for trial to be effective. I have to do that. But nowhere in that do we ask